# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

**In Re:**

PAUL WHIPPLE PFANKUCH
and BONITA MAE PFANKUCH,

**Debtors.**

**Bankruptcy Case
No. 07-01469-JDP**

---

JOHN KROMMENHOEK,
Chapter 13 Trustee for the
Bankruptcy Estate of Paul
and Bonita Pfankuch,

**Plaintiff,**

**vs.**

BANKRUPTCY ESTATE OF
PFANKUCH FOOD SERVICES,
INC., by and through Jeremy J.
Gugino, Chapter 7 Trustee,

**Defendant/
Counter-Plaintiff,**

**Adv. Proceeding No. 08-6005**

---

## MEMORANDUM OF DECISION

---

MEMORANDUM OF DECISION - 1

**Appearances:**

>Kimbell D. Gourley, TROUT, JONES, GLEDHILL, FUHRMAN, Boise, Idaho, Attorney for Plaintiff.

>Jeremy J. Gugino, Boise, Idaho, Chapter 7 Trustee.

## Introduction

A bankruptcy trustee's action seeking to avoid a preferential transfer to a creditor is familiar fare for this Court.  Typically, the trustee and preferred creditor differ on whether the elements of the trustee's claim required by the Code have been satisfied, or whether perhaps one or more of the several defenses afforded to the creditor may apply.

But this is not an ordinary contest.  Indeed, the creditor is not even a party to this litigation, and has instead voluntarily repaid the alleged preference.  Rather, this dispute focuses on which of two different trustees should be allowed to administer that payment.

Plaintiff John H. Krommenhoek ("Krommenhoek") is the trustee in the chapter 13[1] bankruptcy case filed by individual debtors Paul and

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the

MEMORANDUM OF DECISION - 2

Bonita Pfankuch (the "Pfankuchs").  Jeremy J. Gugino ("Gugino") is the

chapter 7 trustee of the bankruptcy estate of Pfankuch Food Services, Inc.,

(the "Corporation").  Krommenhoek commenced this adversary

proceeding against Gugino to obtain a declaratory judgment that monies

paid by the creditor to Gugino constitute property of the Pfankuchs'

chapter 13 bankruptcy estate, and not that of the Corporation's bankruptcy

estate, and requiring that Gugino turn over those funds to Krommenhoek

to distribute to creditors under the Pfankuchs' confirmed chapter 13 plan.[2]

Gugino denies Krommenhoek's claims.

    As agreed at a pretrial conference, and because they believed a trial

in this action was not necessary, Krommenhoek and Gugino cooperatively

prepared and filed a "Trustees' Statement of Undisputed Facts."  Docket

No. 17.  The parties then both moved for summary judgment, Docket Nos.

---

Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

    [2] Pursuant to the terms of the Pfankuch's confirmed chapter 13 plan,
Krommenhoek retained the right to recover money and property, and to avoid
liens, pursuant to chapter 5.  According to the plan, any such recovery is to be
disbursed to creditors as additional disposable income, in accordance with
§ 1325(b).  *See* Pfankuchs' Plan, Bankr. Docket No. 34.

MEMORANDUM OF DECISION - 3

18, 24.  On June 4, 2008, the Court conducted a hearing on the motions at

which it considered the oral arguments of the parties.  Having reviewed

the record, the arguments of the parties, and the relevant legal authorities,

this Memorandum disposes of the pending motions.

### Facts[3]

In May, 1999, Jeff Blackwell Enterprises, a sole proprietor doing

business as "Courtside Delicatessen" entered into an agreement with Boise

Mall, L.L.C. (the "Mall") to lease space known as "Store No. 2016" in the

Boise Town Square Mall Shopping Center.  On August 22, 2003, all of the

tenant's right, title, and interest in and to the lease was assigned to the

Corporation.  The Pfankuchs are, and always have been, the sole

shareholders of the Corporation.  The Mall and the Corporation consented

to the assignment.  And, importantly, in connection with the assignment,

the Pfankuchs executed a guaranty in favor of the Mall agreeing, if the

---

[3] All of these facts appear in the record to be undisputed.  They are taken
primarily from the parties' joint submission regarding the facts referred to above.
However, the Court also considered and adopted additional facts appearing in
the affidavits submitted by the parties that are not contested.

MEMORANDUM OF DECISION - 4

Corporation failed to do so, to pay all amounts due to the Mall under the lease.

In 2007, the Corporation became delinquent in its lease payments to the Mall. Beginning as early as April, 2007, the Mall sent various demand notices to the Corporation and the Pfankuchs. On June 20, 2007, the Pfankuchs caused a payment in the amount of $12,829.15 to be made to the Mall, drawn from their AT&T Universal credit card account, to satisfy past due rents owed under the lease.

On September 17, 2007, the Corporation filed for relief under chapter 7 of the Bankruptcy Code.[4] Gugino was appointed to serve as the trustee in that case.

The following day, September 18, 2007, the Pfankuchs also sought bankruptcy relief by filing a petition under chapter 13 of the Bankruptcy Code.[5] Krommenhoek was appointed as the trustee in that case.

---

[4] Case No. 07-01465-TLM.

[5] Case No. 07-01469-JDP.

MEMORANDUM OF DECISION - 5

Gugino eventually made a demand upon the Mall to recover the

June 20, 2007 payment, asserting that the transfer was a preference subject

to avoidance in the Corporation's bankruptcy case under §§ 547(b) and

550.  The Mall, while conceding the payment was an avoidable preference,

was aware that the Pfankuchs had also filed for bankruptcy, and expressed

confusion as to which trustee it should return the money.  Ultimately, with

the agreement of Krommenhoek, the Mall sent a check in the amount of

$12,829.15 to Gugino, who holds the funds in his trust account pending

resolution of the issues in this action.

### Discussion

### I.

### A.

Summary judgment may be granted if, when the evidence is viewed

in a light most favorable to the non-moving party, there are no genuine

issues of material fact and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056;

MEMORANDUM OF DECISION - 6

*Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81 (Bankr. D. Idaho 2003) (citing

*Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

The Court does not weigh evidence in resolving such motions but,

rather, determines only whether a material factual dispute remains for

trial. *Lane*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116

F.3d 830, 834 (9th Cir. 1997)).  A dispute is genuine if there is sufficient

evidence for a reasonable trier of fact to hold in favor of the non-moving

party.  A fact is "material" if it might affect the outcome of the case.  *Id.*

(citing *Far Out Prods.*, 247 F.3d at 992).

The initial burden of showing there is no genuine issue of material

fact rests on the moving party.  *Esposito v. Noyes (In re Lake Country Invs.)*,

255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d

850, 852 (9th Cir. 1998)).  If the non-moving party bears the ultimate

burden of proof on an element at trial, that party must make a showing

sufficient to establish the existence of that element in order to survive a

motion for summary judgment.  *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S.

317, 322-23 (1986)).

MEMORANDUM OF DECISION - 7

"It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  "[C]ross-motions for summary judgment must be considered separately and do not relieve the court of its responsibility to determine the appropriateness of a summary disposition." *Schaefer v. Deppe (In re Deppe)*, 217 B.R. 253, 259 (Bankr. D. Minn. 1998); *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) ("we evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.")

B.

To avoid a preference made by a debtor to a creditor under § 547(b), the trustee must prove that a transfer of the debtor's property was made:

> (1)  to or for the benefit of a creditor;
> (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;

MEMORANDUM OF DECISION - 8

(3)  made while the debtor was insolvent;

(4)  made –

    (A)  on or within 90 days before the date of the filing of the petition; or

    (B)  between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5)  that enables such creditor to receive more than such creditor would receive if –

    (A)  the case were a case under chapter 7 of this title;

    (B)  the transfer had not been made; and

    (C)  such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

That the June 20, 2007 payment of $12,829.15 to the Mall was indeed an avoidable preference under § 547(b) is treated by the parties as a foregone conclusion.  However, the trustees can not agree which debtor, the Corporation or the Pfankuchs, made the preferential transfer.

According to Gugino, the answer to this question hinges upon the interpretation of the introductory provision of § 547(b), which requires that the transfer be "of an interest of the debtor in property."  Docket No. 24. Because they are unable to adhere to a single meaning for this Code

MEMORANDUM OF DECISION - 9

provision, the parties are at odds over which trustee is entitled to

administer the proceeds of the avoided transfer returned by the Mall.

Krommenhoek's motion for summary judgment is premised on his

argument that the Pfankuchs, as guarantors of the Mall lease, were the

source of the payment made to the Mall.  Gugino discounts

Krommenhoek's argument.  He explains that it is not the source of the

preference payment that determines the outcome of this duel, but rather

which debtor had control over the funds that counts.  The Court addresses

each position in turn.

## II.

In order to grant Gugino's motion for summary judgment, the Court

must find, viewing the evidence in the light most favorable to

Krommenhoek, that there are no genuine issues of material fact and that

Gugino is entitled to judgment as a matter of law.  The parties agree that

there are no genuine issues of material fact.[6]  However, to prevail, Gugino

---

[6] Although there are no genuine issues of *disputed* fact, there is at least one
fact which is *absent* from the record, which the Court will discuss below.

MEMORANDUM OF DECISION - 10

must also show that he is entitled to judgment as a matter of law.  To determine whether Gugino is entitled to judgment as a matter of law, the Court must consider each of the elements in § 547(b).

The first element of a preference is that the transfer be made to or for the benefit of a creditor.  *See* § 547(b)(1).  It is undisputed that the June 20, 2007 payment was made to the Mall, and that the Mall was a creditor of the Corporation.  Thus, § 547(b)(1) is satisfied.

The second requirement is that the target transfer be made for or on account of an antecedent debt owed by the debtor before the transfer was made.  *See* § 547(b)(2).  An obligation to pay past due rent is an antecedent debt.  *See Upstairs Gallery, Inc. v. Macklowe W. Dev. Co., L.P. (In re Upstairs Gallery, Inc.)*, 167 B.R. 915, 918 (9th Cir. B.A.P. 1994); *Fisher v. New York City Dep't. of Hous. Pres. and Dev. (In re Pan Trading Corp.)*, 125 B.R. 869, 875 (Bankr. S.D.N.Y. 1991).  The June 20, 2007 payment to the Mall was made to satisfy the rental delinquencies from January through April, as well as other obligations under the lease, and therefore the payment was on account of an antecedent debt owed by the Corporation.

MEMORANDUM OF DECISION - 11

The third requirement is that the transfer be made while the debtor is insolvent. *See* § 547(b)(3).  This element is satisfied by virtue of the presumption that a debtor is insolvent during the ninety days immediately preceding the filing of the petition.  *See* § 547(f) ("For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.").  Here, the Corporation filed its petition on the eighty-ninth day after the June 20, 2007 payment was made, the Corporation was therefore presumptively insolvent, and no evidence was presented to rebut this presumption.

The fourth element requires that the transfer be made on or within ninety days before the filing of the petition.  *See* § 547(b)(4).  Again, since the transfer was made eighty-nine days before the filing of the petition, albeit by a narrow margin, § 547(b)(4) is satisfied.

Finally, a preferential transfer must enable the creditor to receive more than it would have received in chapter 7 had the transfer not been made.  *See* § 547(b)(5).  The Mall's claim against the Corporation for

MEMORANDUM OF DECISION - 12

amounts due under the lease would constitute a nonpriority unsecured claim in the Corporation's bankruptcy case.  Because the Corporation's liabilities greatly eclipse any assets available for liquidation, unsecured creditors in this case will only receive a small pro rata share of their total claims.  The June 20, 2007 payment therefore enabled the Mall to receive more than it would receive from the Corporation's chapter 7 bankruptcy case had the transfer not been made.  Thus, § 547(b)(5) is satisfied.

Each of the elements to establish an avoidable preference under § 547(b)(1) - (5) have been satisfied.  However, for the Court to grant Gugino's motion, the Court must also find that the transfer in question was a "transfer of an interest of the [Corporation] in property."  11 U.S.C. § 547(b).  Given the unique facts of this case, making such a finding is a challenge.

The Bankruptcy Code does not define the phrase "interest of the debtor in property" or even the term "property."  The Supreme Court has recognized that the phrase "an interest of the debtor in property" is coextensive with "interests of the debtor in property" as that term is used

MEMORANDUM OF DECISION - 13

in § 541(a)(1), which specifies what property interests become property of

the bankruptcy estate upon the filing of the petition.  *Begier v. I.R.S.*, 496

U.S. 53, 59 n. 3 (1990).  Section 541(a)(1) provides that the bankruptcy

estate is comprised of "all legal or equitable interests of the debtor in

property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

Gugino argues that because the Corporation allegedly exercised control

over the AT&T Universal credit line, and used it as a source of corporate

funds, the June 20, 2007 payment made to the Mall by Pfankuchs, charged

to that account, constitutes a transfer of an interest of the Corporation in

property.

   "Generally, a transfer of money or property owned by a third

person to a creditor of a debtor is not a preference."  4 Collier on

Bankruptcy § 547.03[2] at 547-21 - 22 (15th ed. rev. 2006) (citing *Ellenberg v.*

*First Nat'l Bank (In re Hollvey)*, 15 B.R. 850, 851 (Bankr. N.D. Ga. 1981)).

However, "[a] payment by a debtor with borrowed money . . . may

constitute a preference when the loan so used was not made upon the

condition that it should be applied to the particular creditor to whom it

MEMORANDUM OF DECISION - 14

was paid over." *Id.* at 547-25 (citing *Smyth v. Kaufman*, 114 F.2d 40, 42 (2nd Cir. 1940)).  In this case, the AT&T Universal credit card used to pay the debt of the Corporation is a personal credit account approved by AT&T for use by the Pfankuchs individually.

> When a debtor uses the funds of a third party to pay an obligation of the debtor the Court must look to the source of the control over the disposition of the funds in order to determine whether a preference exists.  If the debtor controls the disposition of the funds and designates the creditor to whom the monies will be paid independent of a third party whose funds are being used in . . . payment of the debt, then the payments made by the debtor to the creditor constitute a preferential transfer.

*Hansen v. MacDonald Meat Company (In re Kemp Pacific Fisheries, Inc.)*, 16 F.3d 313, 316 (9th Cir. 1994).  Thus, in deciding whether the credit card advance to the Mall constitutes a preference in the Corporation's case, the Court must examine the extent of the Corporation's control, if any, over the AT&T Universal credit line.

Several facts in the record concerning the credit card account are undisputed.  The Pfankuchs established the account in August, 2004.  The

MEMORANDUM OF DECISION - 15

Corporation is not obligated to pay amounts drawn on the account. The

Pfankuchs used the card primarily to make payments on their timeshare in

Mexico. On June 20, 2007 Bonita Pfankuch used the card to cause an

electronic payment to be made directly from this account to the Mall for

past due rent. In addition to that payment, the card was used on at least

one other occasion for the benefit of the company, on August 8, 2007, to

meet the Corporation's payroll obligations.

However, these facts are insufficient to establish, as a matter of law,

that the Corporation exercised the requisite control over the AT&T

Universal account so as to make the June 20, 2007 payment a preference in

the Corporation's case. In this regard, the facts missing from the record

are particularly important.

There has been no information submitted by the parties about the

prior course of dealing between the Pfankuchs and the Corporation, other

than that described above. In addition, the record does not show how the

Corporation treated the payment in question in terms of its internal

MEMORANDUM OF DECISION - 16

accounting records.[7]  In short, it can not be determined on this record

whether the Pfankuchs intended the Mall payment to be made in their

individual capacity as guarantors, or whether they meant the advance to

be treated as a loan or capital contribution to the Corporation.  Because,

when considering Gugino's motion, the Court must view the evidence in

the light most favorable to Krommenhoek, the record fails to show, as a

matter of undisputed fact, that the Corporation exercised the requisite

control over the AT&T Universal credit card, or engineered the target

transfer.  Accordingly, Gugino is not entitled to judgment as a matter of

law, and his motion for summary judgment must be denied.

III.

Obviously, to grant Krommenhoek's motion, the Court must find

that, viewing the evidence in the light most favorable to Gugino, there are

no genuine issues of material fact, and that Krommenhoek is entitled to

---

[7]  When questioned by the Court about this fact at oral argument, Krommenhoek's counsel conceded that there was nothing in the record that would reveal how the Corporation treated the transaction.  Gugino identified that the payment was listed in the Corporation's Statement of Financial Affairs (SOFA), but absent in the Pfankuchs' SOFA.

MEMORANDUM OF DECISION - 17

judgment as a matter of law.  And as alluded to previously, there is at least

one fact absent from the record:  whether the Mall made demand for

payment upon the Pfankuchs as guarantors for the delinquent payments.

At first glance, this factual omission appears to be of great consequence.

However, a closer examination of the case law reveals that absence of this

fact is inconsequential.

The parties' version of the undisputed facts very closely tracks the

language of the Code.  In particular, with respect to the second preference

element, *i.e.*, § 547(b)(2), the parties' stipulation provides that the subject

transfer was "for or on account of an antecedent debt, namely past due

rent owed before such transfer was made[.]"  Docket No. 17.  However, to

be precise on this point, the Code requires that, to recover a preferential

transfer, the trustee must show that the transfer was "for or on account of

an *antecedent debt owed by the debtor* before such transfer was made[.]"  11

U.S.C. § 547(b)(2), (emphasis added).

Presumably, by inserting "namely past due rent," in their recitation

of the undisputed facts, the parties were attempting to identify the specific

MEMORANDUM OF DECISION - 18

antecedent debt for which the preferential payment was made. However,

their stipulation omits a crucial portion of the statutory language - that the

antecedent debt be one "owed by the debtor." In a typical case involving a

single debtor, such an omission may be of no moment. But here, where

two distinct debtors are involved in the lease transaction, the omission

compels further review. As the tenant and assignee under the lease, the

past due rent is clearly an antecedent debt owed by the Corporation to the

Mall at the time of the subject payment. The Pfankuchs' liability to the

Mall, on the other hand, is not as transparent.

To determine whether a debt is an antecedent debt, the Court must

consider when it was incurred. *CHG Int'l, Inc. v. Barclays Bank (In re CHG

Int'l, Inc.)*, 897 F.2d 1479, 1486 (9th Cir. 1990). "A debt is incurred when

the debtor first becomes legally bound to pay." *Id.*; *In re Upstairs Gallery*,

167 B.R. at 918. The guaranty executed by the Pfankuchs provides:

> [Pfankuchs] do hereby on behalf of themselves,
> their successors and assigns, unconditionally
> covenant and agree with Landlord, their
> successors and assigns, that if default shall at any
> time under the Lease be made by [the

MEMORANDUM OF DECISION - 19

> Corporation], their successors and assigns, in the
> payment of any monthly installment of rent, or
> additional rent, or in the performance of any of
> the terms, covenants and conditions of the Lease,
> and if the default shall not have been cured
> within the time specified in the Lease for curing
> the same, then [Pfankuchs] will well and truly
> pay on demand in cash the monthly installment
> of rent and additional rent and cure such other
> default together with such costs and expenses
> (including without limitation attorney fees)
> incurred by Landlord as a result of or arising out
> of the default for which [the Corporation], its
> successors and assigns are obligated to Landlord
> pursuant to the terms of the Lease.

Docket No. 17, Ex. B.

Despite purporting to condition the Pfankuch's liability upon the

Mall's demand for payment, the only condition precedent to their liability

is a default by the Corporation under the lease.  If the Corporation

defaulted, the Pfankuchs absolutely and unconditionally guaranteed they

would make payment.  Such a guaranty requires the guarantor to pay

immediately upon the principal obligor's default.  *In re Pulliam*, 90 B.R. 241

(Bankr. N.D. Tex. 1988).  In short, the Pfankuchs' liability on their guaranty

arose as soon as the Corporation defaulted, not upon the Corporation's

MEMORANDUM OF DECISION - 20

failure to cure, or the Mall's demand for payment.  *See United States v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1253 (5th Cir. 1985).  Indeed, "[the] demand [for payment] serves solely as a request for payment as opposed to the creation of liability."  *In re Wilson*, 9 B.R. 723, 725 (Bankr. E.D.N.Y. 1981).

It is undisputed that at the time of the subject payment, the Corporation was in default of its obligations under the lease.  Attached to the affidavit of Bonita Pfankuch is a demand letter addressed to the Corporation, which is dated April 2, 2007.  The letter explains that the Corporation was behind in its monthly rental payments to the Mall for January through April, 2007, and therefore, was clearly  in default under its lease at that time.  Since the Pfankuchs' liability under the guaranty arose at the time the Corporation defaulted under the lease, the June 20, 2007 payment by Pfankuchs to the Mall was made for or on behalf of an antecedent debt owed by the Pfankuchs to the Mall before the transfer was made.  Simply put, § 547(b)(2) is satisfied.

MEMORANDUM OF DECISION - 21

With regard to the other elements of a preference, the analysis is nearly identical to that previously discussed with respect to the Corporation.  The only difference is that the Pfankuchs' bankruptcy petition was filed a day later than the Corporation's petition.  While that additional day places the Pfankuchs on the precipice of the 90-day preference period, it does not change the analysis; the payment was made within 90 days before the filing date of the bankruptcy petition.  *See MBNA America v. Locke (In re Greene)*, 223 F.3d 1064, 1068 (9th Cir. 2000) (explaining that when determining whether a transfer occurred within the preference period, the court begins on the day the bankruptcy petition was filed and extrapolates backward.).  Accordingly, all of the elements for a preference required by § 547(b)(1) - (5) have been satisfied by Krommenhoek as to the payment made by Pfankuchs to the Mall.

Having found that each of the elements of a preferential transfer have been satisfied, the Court now turns to whether the subject payment was a transfer of an interest of the Pfankuchs in property.  As explained previously, this element turns on whether or not the Pfankuchs had

MEMORANDUM OF DECISION - 22

control over the AT&T Universal credit card and the disposition of the funds. The affidavit of Bonnie Pfankuch explains that she used the credit card to cause an electronic payment to be made directly to the Mall. Docket No. 22. In his affidavit, Paul Pfankuch explained that "[i]n our attempt to keep the business going (until we could sell it) we agreed to use the personal AT&T Universal credit card to bring the rent current." Docket No. 21. Furthermore, as discussed above, the Pfankuchs were the only obligors on the account, and this credit account was established primarily for their personal use.

The Court concludes that the Pfankuchs exhibited the requisite control over the AT&T Universal credit card to render the subject payment to the Mall a transfer of an interest of the Pfankuchs in property. Krommenhoek is therefore entitled to a judgment avoiding the transfer as a matter of law.

## Conclusion

It is indeed an epic battle of bankruptcy titans when two trustees clash, each intent on exercising his special avoiding powers. Under these

MEMORANDUM OF DECISION - 23

facts, though, only Krommenhoek can demonstrate that a transfer of an

interest of the debtor in property for purposes of § 547(b) has occurred,

and he emerges as the victor.  A separate order will be entered granting

Krommenhoek's motion for summary judgment; Gugino's cross motion

will be denied.

Dated: July 15, 2008

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 24